**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| SITO MOBILE R&D IP, LLC, and SITO MOBILE, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> SFA HOLDINGS INC. f/k/a/ SAKS INCORPORATED, <br><br> Defendant. | Case No. 1:23-cv-00688-RP <br><br> Jury Trial Demanded |

**SITO MOBILE R&D IP, LLC AND SITO MOBILE, LTD.'S
<u>OPPOSITION TO SFA HOLDINGS INC.'S MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | Introduction. | | 1 |
| II. | Argument. | | 3 |
| | A. | Saks is subject to personal jurisdiction in Texas as detailed in the Complaint. | 3 |
| | B. | Venue is proper with respect to Saks. | 8 |
| | C. | Saks' arguments that the Complaint fails to state a claim under 12(b)(6) have no merit. | 10 |
| III. | Conclusion. | | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
   689 F.3d 1358 (Fed. Cir. 2012) ............................................................................................. 4, 7

*AML IP v BBB*,
   2022 U.S. Dist. LEXIS 66678 (April 11, 2022 WDTX) ........................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................... 11, 13, 14

*Bambuser AB v. SITO Mobile R&D IP, LLC et. al*,
   Case No. 2:23-cv-21757-SDW-JSA (DNJ) ............................................................................. 1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... 11, 13, 14

*Celgard, LLC v. SK Innov. Co., Ltd.*,
   792 F.3d 1373 (Fed. Cir. 2015) ............................................................................................. 4, 7

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) ............................................................................................... 10

*Fuentes v. Enhanced Recovery Servs. 2, Inc.*,
   2023 U.S. Dist. LEXIS 73306, 2023 WL 313979 (W.D. Tex. Apr. 26, 2023) ....................... 11

*In re Google LLC*,
   949 F.3d 1338 (Fed. Cir. 2020) ................................................................................................. 9

*Grober v. Mako Products, Inc.*,
   686 F.3d 1335 (Fed. Cir. 2012) ......................................................................................... 3, 4, 8

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018) .................................................................................................. 13

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................................................................. 4

*Johnson v. BOKF Nat'l Ass'n*,
   15 F.4th 356 (5th Cir. 2021) ................................................................................................... 11

*McZeal v. Sprint Nextel Corp.*,
   501 F.3d 1354 (Fed. Cir. 2007) ............................................................................................... 10

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014)......................................................................................................1

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
   414 S.W.3d 142 (Tex. 2013).......................................................................................................3

*In re Monolithic Power Sys.*,
   50 F.4th 157 (Fed. Cir. 2022) ...................................................................................................10

*Personalized Media Communs., LLC v. Apple Inc.*,
   No. 2:15-cv-1366, 2016 U.S. Dist. LEXIS 135672, 2016 WL 5719701
   (E.D. Tex. Sept. 13, 2016) ...................................................................................................11, 13

*Seven Networks, LLC v. Google, LLC*,
   315 F.Supp.3d 933 (E.D. Tex. 2018)..........................................................................................9

*Silent Drive, Inc. v. Strong Indus., Inc.*,
   326 F.3d 1194 (Fed. Cir. 2003)...............................................................................................3, 7

*Slyce Acquisition, Inc. v. Syte — Visual Conception, Ltd.*,
   422 F. Supp. 3d 1191 (W.D. Tex. 2019)...................................................................................10

*Spir Star AG v. Kimich*,
   310 S.W.3d 868 (Tex. 2010).......................................................................................................4

*Stiegele v. Jacques Kreisler Mfg. Corp.*,
   213 F.Supp. 494 (S.D.N.Y. 1962) ..............................................................................................9

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009)...................................................................................................3

*TMT Systems, Inc. v. Medtronic, Inc.*,
   6:20-CV-0973-ADA, 2021 WL 5316411 (W.D. Tex. Oct. 19, 2021)................................9, 10

*Touchcom, Inc. v. Bereskin & Parr*,
   574 F.3d 1403 (Fed. Cir. 2009)...................................................................................................4

*WiTricity Corp. v. Momentum Dynamics Corp.*,
   563 F. Supp. 3d 309 (D. Del. 2021).........................................................................................14

*In re: ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018)........................................................................................8, 9, 10

**Statutes**

28 U.S.C. §1400(b) ...........................................................................................................................8

TEX. CIV. PRAC. & REM. CODE § 17.042(2) .................................................................................3

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................................................11

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................11

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................10

Fed. R. Civ. P. 4(k)(1)(A) .................................................................................................................3

I.      **Introduction.**

SFA Holdings, Inc.'s ("Saks") motion to dismiss pursuant to 12((b)(2), 12((b)(3), and 12((b)(6) should be denied in its entirety, as it is simply a transparent attempt to delay the advancement of this first-filed case here in Texas in the hopes that the court in New Jersey will proceed with a second-filed declaratory-judgment action that, Bambuser AB filed. Bambuser is Saks' admitted indemnitor and the party that has agreed to defend Saks in this case.[1]

Saks claims that it has no presence in Texas and no customers, but does not provide any evidence as to how or why that is actually true. Instead, Saks provides only a declaration from its outside counsel to present factual allegations that only an internal party from Saks could properly attest to. Saks also claims that SITO provides only boiler plate language regarding jurisdiction and venue in its complaint, but does not explain in any manner why SITO's pleadings are supposedly deficient. That is because they are not. Indeed, SITO has provided detailed allegations on both jurisdiction and venue that identify a store location in this district in San Antonio and notes there is also a store in Houston; an overview of the infringing streaming service and protocol used on Saks' website that Saks' customers in WDTX have accessed and

---

[1] In this action, Saks has admitted that it is being defended and indemnified by its vendor, Bambuser AB, a Swedish company. Bambuser (on behalf of Saks) has also filed a declaratory-judgement suit in New Jersey on November 1, 2023 nearly *four* months after SITO's filing here and seeks relief on the same patents and claims asserted here (*i.e.*, a second case). Concurrently with the motion to dismiss, Bambuser also filed a motion to stay this case under the customer-suit exception. *See* D.I. 10. In response to the New Jersey filing, SITO filed a motion to stay, or in the alternative, transfer because both Bambuser's motion to stay here and its declaratory-judgment action in New Jersey fail under the Federal Circuit's ruling in *Microsoft v. DataTern*. *See* D.I. 10, *Bambuser AB v. SITO Mobile R&D IP, LLC et. al*, Case No. 2:23-cv-21757-SDW-JSA (DNJ). *Microsoft* held that the customer-suit exception does not apply and that the vendor cannot bring a second action in a different venue when the vendor accepts its indemnity and defense obligations on behalf a customer; instead, the vendor must litigate in the first jurisdiction where the customer was sued. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014). In other words, the case here in Texas takes precedence over the New Jersey action and a stay of this WDTX case is not warranted as further detailed in SITO's opposition to the motion to stay filed today. D.I. 14.

1

can access; and the placement and use of the videos on Saks' website that Saks entices customers to purchase goods in this district. Finally, the complaint also identifies numerous employees of Saks that reside in this district showing that Saks not only targets this district, but also employs individuals who earn revenue for Saks in this district. Thus, jurisdiction and venue over Saks is proper.

Though Saks claims that SFA Holdings, Inc. is not subject to the Court's jurisdiction and that venue is not proper as to that party, SITO's understanding is that SFA Holdings, Inc. is the party that controls the infringing activities and stores. As noted above, there is no declaration from an SFA Holdings, Inc. representative providing any contrary information. Indeed, there is only the attorney declaration from Mr. Zinna which contains no evidentiary support for these blanket assertions. In sum, SITO submits that the factual allegations it researched and included in the complaint are more than sufficient to establish both jurisdiction and venue (as well as infringement) as to SFA Holdings, Inc.

Saks, however, suggests that Saks Incorporated, the parent entity, and not SFA Holdings, Inc., is the proper party to be named in this action. Accordingly, to the extent naming Saks Inc. as a defendant resolves any purported defects in SITO's allegations against Saks in this case, SITO respectfully requests leave to file an amended complaint with Saks Inc. added as a defendant.

Finally, as another shot at dismissal, Saks alleges that SITO's infringement allegations are deficient and provides a perfunctory "analysis" of SITO's detailed pleading. To obfuscate the details of what SITO actually pleaded in its complaint, Saks creates a chart and says that SITO simply provided "screenshots" with no factual pleadings to support the infringement allegations (for some reason Saks omitted the actual screenshots from the chart). But that is not true. SITO's "screenshots" are evidence, and they show the publicly-available details at each step of the

infringing video streaming process, including identification of each element in the exemplary asserted patent claim that is met by the activity shown in the relevant screenshot. Saks fails to inform the Court that its streaming systems and software are closed systems within the exclusive control of Saks, to which SITO has no access. Therefore, the information that SITO identified to support the infringement allegations in its complaint is more than sufficient to inform Saks of how and why Saks infringes the asserted patents.

II.     **Argument.**

       A.     **Saks is subject to personal jurisdiction in Texas as detailed in the Complaint.**

Rule 4 is the "starting point" for any personal jurisdiction analysis in federal court. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009). Rule 4(k)(1)(A) provides that "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A); *Sinox Co. Ltd., v. Yifeng Mfg. Co. Ltd.* et al, 6:21-cv-01022-ADA (March 22, 2023 WDTX). When the parties have not conducted jurisdictional discovery, the plaintiff need only make prima facie showing that the defendant is subject to personal jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The court must accept all uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor. *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012).

Courts have personal jurisdiction over a nonresident defendant when the state's long-arm statute permits such jurisdiction, and the exercise of jurisdiction is consistent with federal and state due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The Texas long-arm statute broadly allows courts to exercise personal jurisdiction over a nonresident who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. &

REM. CODE § 17.042(2). Because this statute reaches "as far as the federal constitutional requirements for due process will allow," Texas courts may exercise jurisdiction over a nonresident so long as doing so "comports with federal due process limitations." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)). As stated in *Touchcom, Inc. v. Bereskin & Parr*, the Federal Circuit "defer[s] to the interpretation of a state's long-arm statute given by that state's highest court." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009). Therefore, the district court needs to only determine whether the exercise of personal jurisdiction over Saks would violate due process.

To determine whether the assertion of personal jurisdiction would violate due process, a court must analyze whether a defendant has sufficient "minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are three considerations relevant to determining whether sufficient minimum contacts exist: "(1) whether the defendant purposefully directs its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard, LLC v. SK Innov. Co., Ltd.*, 792 F.3d 1373, 1377-78 (Fed. Cir. 2015). "Specific jurisdiction arises out of or relates to the cause of action even if those contacts are isolated and sporadic." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) (internal citation and quotation omitted). The plaintiff has the burden of proving parts one and two of the test above, and the burden shifts to the defendant to prove that personal jurisdiction is unreasonable. *Grober*, 686 F.3d at 1346.

Here, Saks claims that because it is not incorporated in Texas and has no offices in Texas and that it is not engaged in specific conduct targeting Texas it is not subject to personal jurisdiction. *Id.* at 7-8. But Saks' arguments are all predicated on a declaration submitted by its outside counsel and not by any member of Saks. There is no evidence that *Saks* provides indicating that it does not own and operate stores in Texas, that Saks does not market to customers in Texas or that Saks does not use the infringing streaming method in Texas, which is what SITO alleges in its complaint. In other words, Saks does not come forward with a declaration controverting the facts as pleaded in SITO's complaint. The entirety of support for Saks' position here is contained in one conclusory paragraph of its attorney declaration: "SFA Holdings Inc. has no offices in Texas, no employees in Texas, conducts no business in Texas, does not own or operate any stores in Texas, and does not own or operate any facilities of any kind in Texas." *See* D.I. 9-1, at ¶6. These "facts" do nothing to show that Saks does not have sufficient minimum contacts with Texas.

In contrast, SITO has pleaded in its complaint how and why Saks is subject to the Court's jurisdiction by identifying the activities and contacts Saks has with Texas and this District. SITO has pleaded that Saks has committed acts of infringement in Texas by having made, used, offered to sell and/or sold infringing products, services and/or systems in Texas (D.I. 1 at ¶7) and has identified what those infringing services comprise (*i.e.*, the Saks Video Streaming Service). *Id.* at ¶17-20. SITO's complaint also has pleaded that Saks is present in Texas and this District (identifying a Saks Fifth Avenue store located at 7400 San Pedro Ave., San Antonio, Texas 78216). *Id.* at ¶9. *See* https://www.saksfifthavenue.com/locations/?latitude=29.4246&longitude=-98.495141&page=1&storesPerPage=5&term=San%20Antonio%2C%20Texas%2C%20United%20States.



Saks also has a store in Houston. *See Id.*



Further, in a Dun & Bradstreet report, SFA Holdings, Inc. is identified to be d/b/a Saks Fifth Avenue, and its website is listed as www.saksfifthavenue.com. *See* Exh. 1, D&B Report. https://www.dnb.com/business-directory/company-profiles.sfa_holdings_inc.6c2bebfe43730be33a1df5d615252dd4.html. Saks ownership and operation of the store in this district shows that that Saks has purposefully availed itself of the privileges of conducting business in the State of Texas and in this District and sought privileges, protections, and benefits from the laws of the State of Texas. D.I. 1 at ¶¶ 12-14. Similarly, SITO

6

has pleaded that Saks regularly conducts business within the State of Texas and within this District, including marketing and soliciting Texas-based customers and residents of this District through the infringing services (through the physical location of the store and the www.saksfifthavenue.com website). *Id.* at ¶¶ 11, 13, 15. SITO has also pleaded that its infringement claims arise directly from Saks' business contacts and other activities in the State of Texas and in this District, including deriving substantial revenue from the infringing goods and services in the State of Texas and this judicial district. *Id.* at ¶12. Finally, SITO has identified numerous Saks employees who reside in this District who support Saks in its local revenue-generating efforts (store workers) and other functionalities (IT engineers who may work on the Saks website). *Id.* at ¶16. Accordingly, SITO has pleaded in significant detail why Saks is subject to the jurisdiction of this Court, in fact showing that the contacts with Texas and this District are systemic and continuous. But even if Saks' "contacts are [considered] isolated and sporadic," SITO has made prima facie showing that this Court can exercise personal jurisdiction over Saks. *See AFTG-TG, LLC*, 689 F.3d at 1360; *see also Silent Drive, Inc.*, 326 F.3d 1201 (Fed. Cir. 2003).

      Further, Saks cannot claim that the assertion of personal jurisdiction by the Court is "not reasonable and fair" because it has not shown why it should not have been named as a defendant in Texas or that it is unreasonable or unfair to be hauled into a court in Texas. *See Celgard, LLC*, 792 F.3d 1377-78. At best, Saks states that it is a Tennessee corporation with a New York headquarters. But that does not mean that jurisdiction is improper here in Texas, especially given SITO's detailed pleadings supporting jurisdiction, which Saks does not meaningfully challenge. Accordingly, at this stage of the pleadings "[t]he court must accept all uncontroverted allegations

in [SITO]'s complaint as true and resolve any factual conflicts in [SITO's] favor." *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012).

To the extent that Saks suggests that "Saks Incorporated," the purported parent entity, and not SFA Holdings, Inc., is the proper party to be named as a defendant in this action, SITO requests the Court to allow SITO leave to amend its complaint to name "Saks Incorporated." *See* D.I. 9-1, at ¶5. It is unclear, however, why Saks claims that SFA Holdings, Inc. does not have ownership of stores or employees in Texas because the parent company, Saks Incorporated, appears to have changed its name to SFA Holdings, Inc. in 2022. *See* Exh. 2. Accordingly, though SITO believes the factual allegations in its complaint are more than sufficient to establish jurisdiction over SFA Holdings Inc., rather than dismissal, SITO should be granted the opportunity to conduct jurisdictional discovery and amend its complaint to add "Saks Incorporated" as a defendant.

**B.     Venue is proper with respect to Saks.**

Whether venue is proper under 28 U.S.C. §1400(b) is an issue unique to patent law and thus governed by Federal Circuit precedent. *In re: ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citation omitted). When venue is challenged, the plaintiff bears the burden to show venue is proper. *Id.* at 1013. But the Court must accept plaintiff's allegations regarding venue as true and resolve all conflicts in plaintiff's favor. *See AML IP v BBB,* 2022 U.S. Dist. LEXIS 66678*, *3 (April 11, 2022 WDTX) citing Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F.App'x 612, 615 (5th Cir. 2007). There are three general requirements the plaintiff must show to meet its burden: (1) that there is a physical place in the district at issue; (2) that place is a regular and established place of business; and (3) it is the defendant's place. *Id.* at 1014-15. To be a regular and established place of business, the alleged place of business must be a place where defendant's employees or agents are regularly and physically present and conduct defendant's

business. *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). Satisfying these three elements, combined with an allegation that infringement occurred in the district at issue, can establish venue and allow a case to survive a motion to dismiss. *In re ZTE (USA) Inc.*, 890 F.3d at 1014; *see also TMT Systems, Inc. v. Medtronic, Inc.*, 6:20-CV-0973-ADA, 2021 WL 5316411, at *2 (W.D. Tex. Oct. 19, 2021) (holding that a simple allegation of infringement, even if the defendant denies the allegation, is sufficient to establish venue); *see also Seven Networks, LLC v. Google, LLC*, 315 F.Supp.3d 933, 946 (E.D. Tex. 2018) (finding that an allegation that the infringer practiced one step of the infringing method in the district, even if the act was not tied or related to the infringer's regular and established place of business in the district, can be enough to establish venue); *Stiegele v. Jacques Kreisler Mfg. Corp.*, 213 F.Supp. 494, 496 (S.D. N.Y. 1962) (holding that the test used to determine whether patent infringement occurred for purposes of venue is less strict than when the case is tried on the merits).

  Here, as with the personal jurisdiction analysis, Saks again relies solely on the declaration of its outside counsel and claims it does not reside in Texas and does not have a regular and established place of business in this jurisdiction. *See* D.I. 9 at 10; D.I. 9-1 at ¶6. Saks provides nothing more, including any evidence that it does not own the department store identified in the complaint in this district (7400 San Pedro Avenue, San Antonio, Texas 78216). D.I. 1 at ¶¶ 5, 9. SITO, on the other hand, has detailed why venue is proper in this District. As with the detailed information cited above with respect to jurisdiction, SITO has identified the San Antonio store located in this District which is owned by Saks. D.I. 1 at ¶¶ 5, 9.; (*see* image above). This is a regular and established place of business, and it is Saks' place of business. *Id. at* ¶¶ 9, 16. SITO has also identified Saks employees residing in this District and these employees may have information that is relevant to the claims; *e.g.*, Elliot Chenger, a senior engineering manager,

9

may have knowledge regarding the videos utilized across the Saks website that utilize the infringing services. *Id.* at ¶ 16; *see also In re Monolithic Power Sys.*, 50 F.4th 157, 160 (Fed. Cir. 2022) (employees homes may be a place of business and be considered defendant's "own" place in certain circumstances). Indeed, the purpose of some of these Saks employees in this District is to support Saks' local revenue generation efforts. Accordingly, SITO's pleadings on their face satisfy the three requirements set forth in *In re Cray*. *See In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017); *see also In re: ZTE (USA) Inc.*, 890 F.3d 1014-15. Further, SITO has alleged that infringement occurs in this District (D.I. 1 at ¶¶ 13, 15), and any claim by Saks that it does not infringe (though there are none), should be resolved in SITO's favor. *See TMT Systems, Inc.*, 2021 WL 5316411, at *2 (WDTX Oct. 19, 2021).

And as mentioned above, it is odd for Saks to claim that SFA Holdings, Inc. does not have ownership of the store in this District or employees in this District because the parent company, Saks Incorporated, appears to have changed its name to SFA Holdings, Inc. in 2022. *See* Exh. 2. But as with personal jurisdiction, to the extent Saks intimates that "Saks Incorporated," the parent entity, and not SFA Holdings, Inc., is the proper party in this action, rather than dismissal, SITO should be granted the opportunity to conduct discovery and amend its complaint to add "Saks Incorporated" as a defendant.

    **C.    Saks' arguments that the Complaint fails to state a claim under 12(b)(6) have no merit.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is "a purely procedural question not pertaining to patent law," with respect to the sufficiency of the allegations in the pleading and so the law of the Fifth Circuit controls. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are *'viewed with disfavor and are rarely granted.'" Slyce Acquisition, Inc. v. Syte —*

*Visual Conception, Ltd.*, 422 F. Supp. 3d 1191, 1198 (W.D. Tex. 2019) (citing *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009)).

Fed. R. Civ. P. 8 does not require "detailed factual allegations . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). To meet this factual-plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[A] court must take [factual] allegations as true, no matter how skeptical the court may be." *Id*. at 696 (citing *Twombly*, 550 U.S. at 555); *see Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021) ("The court accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor"). Ultimately, the purpose of Fed. R. Civ. P. 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). Finally, Courts regularly deny motions to dismiss that simply offer alternative facts to those alleged in a complaint. *See, e.g., Personalized Media Communs., LLC v. Apple Inc.*, No. 2:15-cv-1366, 2016 U.S. Dist. LEXIS 135672, 2016 WL 5719701, at *9 (E.D. Tex. Sept. 13, 2016); *Fuentes v. Enhanced Recovery Servs. 2, Inc.*, 2023 U.S. Dist. LEXIS 73306, 2023 WL 313979 at *5-6 (W.D. Tex. Apr. 26, 2023).

Saks argues that SITO's complaint fails to set forth a plausible claim for direct or indirect infringement. D.I. 9 at 14-15. Saks is wrong on both counts. Saks mischaracterizes the evidence SITO has provided as mere "screenshots" that do not provide it with enough information for the

11

infringement allegations. Saks offers a chart to buttress its "analysis" of SITO's infringement allegations, but that chart obfuscates what SITO actually pleaded in its complaint. D.I. 9-2 ("Chart"). Indeed, Saks conveniently omits the actual screenshots from its brief and accompanying chart, thereby implying that all SITO has done is copy claim language into the complaint. D.I. 9 at 15. SITO's screenshots, however, are not merely generic information. Instead, the screenshots included in SITO's complaint are evidence and detail on a claim element by claim element basis how a request for a video is generated and how the video is subsequently streamed through Saks' website. For example, in the complaint, with respect to the '244 patent, ¶54 states:

> Saks performs a method of streaming video content based on a request (e.g., GET request) as demonstrated by the example provided below:
>
> 
>
> *See e.g.*, https://www.saksfifthavenue.com/c/live-stream/video

D.I. 1 at ¶54. The screen shot identifies the video requested on the left-hand side, *i.e.*, the "GET" instruction as detailed in the complaint, and then additional information on the right as to where

12

the files are being requested from. *Id*. SITO's allegations for the remainder of the claim elements of the '244 patent (as well as the other asserted patents) follows this format. For example, in its allegations, SITO identifies the type of file (.M3U8 file), the reservation generated (a connection or session), as well as the resource (a CDN) and viewer (client device). Each of these elements is tied to a screen shot as the request is fulfilled. *See* D.I. 1 at ¶¶ 55-58. This detailed information is provided for all the patents. *Id.* at ¶¶ 69-75 ('307 patent); ¶¶ 86-88, 91 ('940 patent); ¶¶ 103-104 ('138 patent); ¶¶ 118-123 ('781 patent); and ¶¶ 135-138 ('675 patent). These are not mere random screenshots as Saks would have the court believe. Instead, these "inspect elements," which were obtained using a software packet tracing tool, provide an "under the hood" detailed analysis of how SITO has alleged infringement of the asserted patents. At this juncture, without fact discovery and access to Saks' code and servers, the information that SITO identified and sets forth in its complaint is more than sufficient to inform Saks of SITO's infringement allegations. *Iqbal*, 556 U.S. at 678. Effectively, as shown by the detailed analysis above, all Saks has done here is to simply offer alternative facts to those alleged in a complaint, which should not be credited. *See, e.g., Personalized Media Communs., LLC,* 2016 U.S. Dist. LEXIS 13567, at *9 (E.D. Tex. Sept. 13, 2016).

Indeed, because SITO's infringement allegations are based on publicly-available information and use of a software packet tracing tool, and Saks' own source code and servers are *within the possession and control of Saks*, SITO's infringement can only be based "on information and belief." This is perfectly acceptable. Indeed, the Fifth Circuit has recognized that the standard set out in *Twombly* and *Iqbal* "does not prevent a plaintiff from pleading facts alleged upon information and belief where the *facts are peculiarly within the possession and control of the defendant.*" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of*

*Ga., Inc.,* 892 F.3d 719, 730 (5th Cir. 2018) (emphasis added). Thus, SITO's allegations made "on information and belief" are more than sufficient to support its claims for patent infringement. *See, e.g., WiTricity Corp. v. Momentum Dynamics Corp.*, 563 F. Supp. 3d 309, 328 (D. Del. 2021) ("Although some of the allegations regarding the accused product are plead on information and belief, more detailed allegations are not required at this stage. Indeed, it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or confidential data such as source code."). Therefore, at this stage, SITO's identification of the technical elements meeting the claim limitations, where they are found on the screenshots, and how they infringe on an element-by-element basis is more than sufficient to satisfy *Twombly* and *Iqbal*.

As to indirect infringement, Saks provides a thin two-paragraph discussion arguing that SITO only sets forth broad conclusory statements in its pleadings relating to indirect infringement and that because Saks has no customers, it cannot indirectly infringe. D.I. 9 at 15-16. But Saks offers no analysis at all as to why SITO's allegations are allegedly deficient and, again, provides no support for the statement that it has no customers. Indeed, as discussed above, facts show that Saks does have customers in this district. Contrary to Saks' assertions, in the complaint SITO details how and since when Saks has been on notice of infringement (including for which patents) (D.I. 1 at ¶ 59), includes the activities that are directed specifically to Saks' customers (*Id.* at ¶ 60), alleges that Sak induces its customers to infringe (*Id.* at ¶ 61), states that the customers directly infringe (*Id.* at ¶ 62), and alleges that the services have been specifically configured to infringe (*Id.* at ¶ 63). Accordingly, at the pleading stage, SITO has presented sufficient allegations as to indirect infringement.

### III.     Conclusion.

For the reasons stated above, this Court should deny Saks motion to dismiss in its entirety and proceed with SITO's first-filed action here. Alternatively, the Court should allow SITO leave to amend the Complaint and add "Saks Incorporated" as a party based on Saks own statements.

January 10, 2024                              Respectfully submitted,

/s/ Zachary H. Ellis
Zachary H. Ellis (State Bar No. 24122606)*
Ronald M. Daignault (*pro hac vice* to be filed)*
Chandran B. Iyer (*pro hac vice* to be filed)
DAIGNAULT IYER LLP
8618 Westwood Center Drive, Suite 150
Vienna, VA 22182
zellis@daignaultiyer.com
rdaignault@daignaultiyer.com
cbiyer@daignaultiyer.com
*Not admitted in Virginia*

*Attorneys for Plaintiffs
SITO Mobile R&D IP, LLC and
SITO Mobile Ltd.*