# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| SITO MOBILE R&D IP, LLC, and SITO MOBILE, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> SFA HOLDINGS INC. f/k/a/ SAKS INCORPORATED, <br><br> Defendant. | Case No. 1:23-cv-00688-RP |

**DEFENDANT SFA HOLDINGS INC.'S
MEMORANDUM OF LAW IN FURTHER SUPPORT OF
OPPOSED MOTION TO STAY PENDING RESOLUTION OF
TRUE DEFENDANT'S DECLARATORY JUDGMENT ACTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The Customer-Suit Exception Applies Here, Notwithstanding Bambuser's Agreement to Indemnify ............................................................................................ 2

        i. SITO Misunderstands the Customer-Suit Exception ..................................... 3

        ii. SITO's Cases Do Not Hold that an Indemnity Obligation Prevents Application of the Customer-Suit Exception ...................................................................... 5

    B. The Declaratory Suit is the Most Efficient Suit to Resolve SITO's Multiple Patent Infringement Claims ................................................................................................. 7

        i. The Declaratory Suit Seeks to Resolve Suits Against All Bambuser Customers ........ 8

        ii. This Court Lacks Jurisdiction Over Saks and Venue is Improper in this District……................................................................................................... 9

    C. SITO Concedes That the General Stay Factors Weigh in Favor of Staying This Case ............................................................................................................................ 9

III. CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**CASES**

*Arris Grp., Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011) ................................................................................................ 3, 7

*Early Warning Servs., LLC v. Grecia*,
   No. 21-cv-1050, 2021 WL 3471165 (E.D. Pa. August 6, 2021) ..................................... 1, 3, 5

*Finisar Corp. v. Capella Photonics, Inc.*,
   No. 20-cv-07629-EMC, 2021 WL 810227 (N.D. Cal. March 3, 2021) .............................. 1, 5

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363 (Fed. Cir. 2014) ..................................................................................................... 3

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) ..................................................................................................... 2

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
   No. 17 C 9175, 2018 WL 3059604 (N.D. Ill. June 20, 2018) ........................................ 2, 3, 6

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014) .............................................................................................. passim

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) ................................................................................................ 2, 4

**I.      INTRODUCTION**

Plaintiffs SITO Mobile R&D IP, LLC and SITO Mobile, LTD. (collectively "SITO") do not even address any of the customer-suit exception factors, or in any way dispute that SFA Holdings Inc. f/k/a Saks Incorporated's ("Saks") motion to stay this case ("the Motion") pending resolution of the declaratory action filed by Bambuser AB ("Bambuser") in the District of New Jersey (the "Declaratory Suit"), establishes those factors and the general stay factors are met here.

Instead, SITO misinterprets *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899 (Fed. Cir. 2014), and two follow-on cases to assert an incorrect proposition that the customer-suit exception and the general stay factors do not apply here because Bambuser has agreed to indemnify Saks. However, *Microsoft* addresses the requirements for Article III *standing* to bring a declaratory judgment suit, but nowhere mentions the customer-suit exception. In fact, courts apply the customer-suit exception where – as here – the supplier bringing a later-filed declaratory judgment action has agreed to indemnify the customer who has been sued in an early action.

The other two cases SITO cites, *Early Warning Servs. v. Grecia* and *Finisar Corp. v. Capella Photonics* actually refute, rather than support, SITO's manufactured "rule" that the customer-suit exception does not apply when a supplier agrees to indemnify its customer. Both cases, after explicitly finding such an indemnity obligation existed, went on to independently apply and analyze the customer-suit exception factors in significant detail, and neither case stated the exception did not apply due to the indemnity obligation.

Even if SITO's customer suit argument were correct (it is not), the Motion should still be granted because SITO does not address the application of any of the general stay factors to the present case. This leaves Saks' arguments regarding the applicability of the general stay factors unrefuted, and the Motion can and should be granted on that independent basis.

## II.     ARGUMENT

### A.     The Customer-Suit Exception Applies Here, Notwithstanding Bambuser's Agreement to Indemnify

As established in Saks' opening brief, all three customer-suit exception factors support application of the customer-suit exception here. (Dkt. 10 ("Saks Br.") at 8-13). In its opposition, SITO *does not even address* those factors. Instead, SITO argues that the customer-suit exception does not apply if the supplier is obligated to indemnify the customer that the patent owner has sued. (Dkt. 14 ("SITO Br.") at 2). This is simply wrong – none of SITO's cited cases so hold, and indeed, those cases affirmatively hold to the contrary.

While each of SITO's cases is addressed in detail below, initially it bears emphasizing that SITO's position that an indemnity obligation cancels out the customer-suit exception is facially nonsensical. The seminal Federal Circuit case essentially *establishing* the customer-suit exception explicitly states that the exception was created based upon the Court's "recognition that…a manufacturer must protect its customer, *either as a matter of contract*, or good business…" *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (emphasis added).

SITO is thus inexplicably arguing that the Federal Circuit created a doctrine to address situations when a supplier is contractually obligated to defend its customer … but has also promulgated law that prohibited courts from applying that same doctrine … *when the supplier is contractually obligated to defend its customer*. That this is obviously wrong is further confirmed by case law where federal courts have applied the customer-suit exception even when finding that an indemnity obligation exists. *See, e.g., Mantissa Corp. v. Old Second Bancorp, Inc.*, No. 17 C 9175, 2018 WL 3059604, at *2, 5 (N.D. Ill. June 20, 2018) (applying customer-suit

2

exception to stay case against software supplier's ultimate customer while finding that supplier agreed to indemnify such customer).

### i. SITO Misunderstands the Customer-Suit Exception

SITO's position on the alleged interplay between indemnity and the customer-suit exception confuses two different things: (1) the legal injury required to establish Article III *standing* for a supplier to bring a declaratory judgment action if its customer(s) are sued for infringement; and (2) the requirements for application of the customer-suit exception. A different rule applies to each of these two different issues.

*Any* contractual indemnity obligation requiring the supplier to pay damages is sufficient to establish Article III standing for the supplier to bring a declaratory judgment action because the indemnity obligation creates the requisite legal injury, as the supplier will ultimately be liable for any resulting damages. *See*, *e.g.*, *Microsoft*, 755 F.3d at 904 ("If Appellees had an obligation to indemnify their customers, they would then have standing to bring this suit"); *Early Warning Servs., LLC v. Grecia*, No. 21-cv-1050, 2021 WL 3471165, at *6-7 (E.D. Pa. August 6, 2021).

However, a different rule applies for permitting application of the customer-suit exception, which gives precedence to a later filed declaratory judgment action in a different forum. Application of the exception requires an allegation that the *supplier's* product, or the supplier, infringes the patent. This allegation can be made directly against the supplier, or by allegations against the supplier's product in the litigation against the customer. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375-79 (Fed. Cir. 2011) (infringement allegations in customer suit implicated supplier); *Mantissa*, 2018 WL 3059604 at *2, 5.

It is in *this* situation that the exception applies to avoid multiple suits against multiple customers in favor of a single suit by the *supplier* – the true defendant in a patent dispute.

3

Courts consistently apply the two rules independently because, as numerous courts have explained, not all indemnity obligations sufficient to provide standing involve an allegation sufficient to invoke the customer-suit exception. For example, as *Microsoft* explained, "suppose that the accused [supplied] product was capable of multiple uses and there was no evidence or allegation that the [supplier] encouraged the [customer's allegedly infringing] use accused of infringement." *Microsoft Corp.*, at 904 n.2. Or, suppose the supplier sold its customer a component not accused of, or subject to, the infringement claim, and the alleged infringement resulted only from the customer combining it with many other parts to build a big machine accused of infringement.

In such situations, while the supplier may have some private contractual obligation (or a business incentive) to defend and indemnify its customer, the infringement allegations would result from the *customer's conduct,* not from the supplier's product or the supplier. *See Microsoft*, 755 F.3d at 904 n.2. In such instances, the customer-suit exception would not apply, because neither the supplier's product or conduct, nor that of any of its other customers, are necessarily alleged to infringe the patent.

In short, as in any other area of law, Article III standing may be established by any cognizable legal injury – including but not limited to an indemnity obligation. Application of the customer-suit exception, however, does not depend upon indemnification, but requires, *inter alia*, the supplier's own product or conduct be the subject (expressly or impliedly) of the infringement allegation.[1]

---

[1] This doctrine merely recognizes that whether or not a single litigation can resolve what would otherwise be multiple customer lawsuits depends upon the accused infringement being similar or the same for multiple customers of the supplier. *See Spread Spectrum Screening*, 657 F.3d at 1357 ("The guiding principles in the customer-suit exception are efficiency and judicial economy"). It does not depend in any way on whether some, none, or all of the customers have

4

### ii.     SITO's Cases Do Not Hold that an Indemnity Obligation Prevents Application of the Customer-Suit Exception

Turning to SITO's cases, in *Early Warning*, the Court first held that the supplier *did* have standing under *Microsoft* to bring its declaratory judgment action in the already existing patent infringement action *based solely upon indemnity obligations*. *Early Warning Servs.*, 2021 WL 3471165 at *6. The Court reasoned similarly in *Finisar Corp. v. Capella Photonics, Inc.*, No. 20-cv-07629-EMC, 2021 WL 810227 (N.D. Cal. March 3, 2021), holding that if the supplier's alleged indemnification obligations existed, they would provide the supplier with standing. *Id.* at 4 (citing *Microsoft*). Both cases ultimately declined to apply the customer-suit exception, but each did so with a completely separate and lengthy analysis of the customer-suit exception factors to determine the key question: whether the infringement claims were against the customer or against the supplier (or its product). *Early Warning*, at *2-8 (relying on patent holder's repeated representations that he has no claim against supplier or its customers); *Finisar*, at *5-6.

Neither case even remotely implied, much less explicitly held, that the customer-suit exception did not apply simply because there was an indemnity obligation. Indeed, in both cases, the court's lengthy analysis of the customer-suit exception and its factors would have been meaningless and unnecessary if the Court could have simply held the customer-suit exception did not apply because there was an indemnity obligation, since the Court explicitly found such an obligation to exist in each case.

SITO also relies upon *Microsoft*. Although *Microsoft* discusses only the Article III standing issue and never mentions the customer-suit exception, it is nonetheless instructive on the difference between the two issues.

---

indemnity obligations from the supplier. SITO does not explain why the indemnity obligation would even be relevant to the judicial efficiency goal of the customer-suit exception, much less entirely dispositive of the issue as SITO argues.

5

*Microsoft* involved the assertion in a Texas court of two patents against Microsoft's customers. Microsoft subsequently filed a declaratory judgment action against the same two patents, the '402 patent and the '502 patent, in the Southern District of New York. Microsoft had no indemnity obligation with respect to either patent. *Microsoft*, 755 F.3d at 902. With respect to the '402 patent, the Federal Circuit held that *if* Microsoft had an indemnity obligation, Microsoft could bring its declaratory judgment action by joining the Texas case, *but it could not file a separate declaratory judgment action in New York. Id.* at 904.

However, and critically, with respect to the '502 patent, the Court held that Microsoft's subsequently filed declaratory judgment action in New York *was* appropriate, and even affirmed the New York Court's substantive holding that Microsoft did not infringe the '502 patent. *Id.* at 905, 911.

Microsoft's customers had been equally accused of direct infringement of both patents. The Court explained the different results at length in *Microsoft*, but nothing in the explanation has anything to do with whether there were indemnity obligations. Instead, the Court analyzed, in significant detail, the difference in the infringement allegations and claim charts presented in the customer suit. The Court ultimately concluded the infringement allegations and claim charts for the '402 patent were *not directed to Microsoft's own product* but to the customer's conduct, whereas with respect to the '502 patent, the infringement allegations and claim charts *implicated Microsoft's product*. *Id.* at 904-07; s*ee also Mantissa*, 2018 WL 3059604 at *2, 5 (finding indemnity obligation and applying customer-suit exception).

Here, the request to stay this case is not impacted by the fact that Bambuser is indemnifying Saks. Bambuser has itself and its other customers to worry about too, and it does not have to take up arms for them here. SITO does not dispute that the allegations in the

6

Complaint are directed to Bambuser supplied technology, or that SITO sent a draft complaint for infringement of the same patents for use of the same technology to another Bambuser customer, Uniqlo Co. Ltd. ("Uniqlo"). Indeed, SITO even attempted to directly negotiate a license with Bambuser <u>to protect all of Bambuser's customers from infringement charges regarding the same patents at issue here, for use of the same technology at issue here</u>. (Declaration of Jeffrey Kaplan in Further Support of Saks' Motion to Stay ¶¶ 4-7).

This provides both Article III standing for Bambuser to bring the separate declaratory judgment action in New Jersey, and makes this a textbook case for application of the customer-suit exception, because there is a "broader case and controversy beyond the indemnification obligations [to SAKS]." *Microsoft*, 755 F.3d at 903-07 ("declaratory judgment jurisdiction exists where a patentee accuses customers of direct infringement based on the use of the supplier's product"); *Arris*, 639 F.3d at 1375-79.

Because SITO has not addressed any of the customer-suit exception factors, but has simply concocted and then relied upon an incorrect rule of law, the Court should hold the customer-suit exception applies.

    **B.**    **The Declaratory Suit is the Most Efficient Suit to<br>           Resolve SITO's Multiple Patent Infringement Claims**

SITO's claim that the Western District of Texas is the best venue for this patent dispute because SITO has brought prior suits against unrelated third parties concerning the subject patents in this district rings hollow given that SITO has already sent a draft complaint to another Bambuser customer, Uniqlo, captioned for the Southern District of New York (SITO Br. at 1, 4-5), has filed at least one other lawsuit asserting the same patents in the Eastern District of Texas (*SITO Mobile R&D IP, LLC v. ExploreLearning, Inc.*, Case No. 4:23-cv-00348 (E.D. Tex.)), and has filed several other lawsuits asserting patents in the same family as the patents in suit in

7

Delaware (*SITO Mobile R&D IP, LLC v. FuboTv, Inc.*, Case No. 1:21-cv-00725 (D. Del.)) and the Central District of California (*SITO Mobile R&D IP, LLC v. Hulu, LLC*, Case No. 2:21-cv-06322 (C.D. Cal)). Moreover, no prior case in this District has involved Bambuser or Bambuser's technology, or the infringement or claim construction issues that will be presented by enforcement of the patents against that technology.

The judicial efficiency achieved by the customer-suit exception – resolving, in one litigation, all potential suits against Bambuser's customers that use the same accused Bambuser technology – is not impacted in any way by the fact that SITO brought prior suits against other parties for unrelated technology in this District.

### i.  The Declaratory Suit Seeks to Resolve Suits Against All Bambuser Customers

Saks' Opening Brief demonstrated that Bambuser brought the Declaratory Suit to resolve not just the issues concerning Saks, but also concerning Uniqlo, the Bambuser technology, and the use of that technology by any other Bambuser customer that SITO may seek to sue for patent infringement. (*Id.* at 1-5, 12-13).

In response, SITO describes its threatened suit against Uniqlo as "mythical" supposedly because, having sent Uniqlo a fully drafted 74-page, ready-to-file complaint, along with an explicit letter threatening "litigation" so "the Court" could determine the infringement issue, SITO had offered to negotiate, and has not yet filed the suit. (SITO Br. at 1, 5-6). This is nonsense. Sending a fully drafted complaint with a letter threatening imminent litigation clearly establishes a case and controversy that requires resolution. The opportunity to negotiate does not change that threat – it makes the threat all the more serious, since SITO was using it to force Uniqlo to capitulate.

This current case, if allowed to proceed, can only resolve SITO's claims against Saks. It cannot resolve the claims against Uniqlo; nor can it put to rest other claims against Bambuser's many other customers. By contrast, the Declaratory Suit will consolidate the issue in one court for all current and prospective defendants.

### ii. This Court Lacks Jurisdiction Over Saks and Venue is Improper in this District

Concurrent to filing this motion to stay, Saks filed a motion to dismiss based, in part, on this Court's lack of personal jurisdiction over Saks and that venue is improper in this District because Saks is neither present nor does business in Texas, as established by facts contained within the Declaration of Michael J. Zinna ("Zinna Decl.") and the Corrective Declaration of Michael J. Zinna, Saks' counsel. (Dkt. 9 ("Saks' Dismissal Br.")). SITO does not dispute that those facts conclusively refute its allegations, but instead buries its head in the sand by arguing that this Court should ignore that uncontroverted evidence simply because outside counsel for Saks testified to it. (Dkt. 15 ("SITO Dismissal Br.") at 1, 5, 9). As set forth in those motion papers, even before reaching the issue of a stay, this case should be dismissed for lack of personal jurisdiction and improper venue.

### C. SITO Concedes That the General Stay Factors Weigh in Favor of Staying This Case

In addition to not disputing any of the customer-suit exception factors, SITO also fails to dispute any of the general stay factors. SITO instead once again relies solely on its incorrect interpretation of *Microsoft* to argue that "just as the customer-suit factors are not applicable or relevant, the traditional stay factors are not relevant and have no applicability…" (SITO Br. at 9). As explained *supra* section II.A, *Microsoft* does not bar the applicability of the customer-suit exception. In the same vein, *Microsoft* does not bar the applicability of the general stay factors— *or even mention or address the stay factors in any way*.

9

### III.  CONCLUSION

For the reasons set forth in the Motion as well as the foregoing reasons, the Court should stay this case pending final resolution of the Declaratory Suit.

Dated: January 31, 2024

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: */s/ Michael J. Zinna/*
Michael J. Zinna (admitted in W.D. Tex.)
Vincent M. Ferraro (admitted in W.D. Tex.)
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
Email: MZinna@kelleydrye.com
Email: VFerraro@kelleydrye.com

*Attorneys for Defendant*
*SFA Holdings Inc.*
*f/k/a/ Saks Incorporated*

## CERTIFICATION OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that on the date below all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system and via email.

Dated: January 31, 2024

By: */s/ Michael J. Zinna/*  
Michael J. Zinna